UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| TYLER J., OBO R.D.,[1] | § | |
| | § | |
| Plaintiff, | § | Case # 1:20-cv-899-DB |
| | § | |
| v. | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Tyler J. ("Plaintiff") brings this action on behalf of R.D., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying R.D.'s application for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order (*see* ECF No. 17).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 15, 18. Plaintiff also filed a reply. *See* ECF No. 20. For the reasons set forth below, Plaintiff's motion (ECF No. 15) is **DENIED**, and the Commissioner's motion (ECF No. 18) is **GRANTED**.

## <u>BACKGROUND</u>

On November 22, 2016, Plaintiff protectively filed an application for SSI child's benefits on behalf of her minor daughter, R.D., alleging disability beginning November 22, 2016, due to:

---

[1]  The Court notes that Agency records indicate that the claimant's full name corresponds to the initials "R.E.D." *See, e.g.*, Tr. 190. Plaintiff's initial complaint (the "Complaint") indicates the initials "R.D." *See* ECF No. 1-6. However, Plaintiff motion for judgment on the pleadings uses the initials "R.E.D."  *See* ECF No. 15-1. The Court will refer to the claimant as "R.D.," as documented in the Complaint.

one leg shorter than the other; one foot bigger than the other; trouble walking; allergies; ADHD; and behavioral issues. Transcript ("Tr.") 61, 190-95, 208. The application was initially denied on February 8, 2017, after which Plaintiff timely requested a hearing. Tr. 61.

On November 30, 2018, Administrative Law Judge Gregory Moldafsky (the "ALJ") conducted a video hearing from Alexandria, Virginia. Tr. 61.  Plaintiff and R.D. appeared and testified in West Seneca, New York, and were represented by Jeanne Murray, an attorney. Tr. 61.

The ALJ issued an unfavorable decision on May 8, 2019, finding that R.D. was not disabled. Tr. 61-76. On June 1, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's May 8, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.  § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed R.D.'s claim for benefits under the process described above and made the following findings in his May 8, 2019 decision:

1. The claimant was born on October 22, 2010. Therefore, she was a preschooler on November 22, 2016, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since November 22, 2016, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Congenital leg length discrepancy with hemihypertrophy of the lower limb, attention-deficit hyperactivity disorder, and asthma (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since November 22, 2016, the date the application was filed (20 CFR 416.924(a)).

Tr. 61-75.

Accordingly, the ALJ determined that, for the application for SSI protectively filed on November 22, 2016, R.D. is not disabled under section 1614(a)(3)(C) of the Act.  Tr. 76.

## ANALYSIS

Plaintiff asserts three points of error. *See* ECF No. 15-1 at 2, 12-30. First, Plaintiff argues that the ALJ failed to properly evaluate and accord weight to opinions from R.D.'s teacher(s), which resulted in unsupported conclusions. *See id*. at 12-18. Specifically, Plaintiff argues that the ALJ failed to properly explain how he reconciled his findings for less than marked limitations with a December 2016 teacher questionnaire completed by first grade teacher Anjelica Haddad ("Ms. Haddad"), whose opinions, Plaintiff argues, supported marked imitations in multiple domains. *See id*. Plaintiff similarly argues that the ALJ failed to weigh a March 2018 occupational therapy summary (the "OT Summary") completed by Denise Bauer, COTA/L ("Ms. Bauer"), and Alyssa Hameister, MS, OTR/L ("Ms. Hameister"). *Id*.

Plaintiff's second point argues that the ALJ failed to properly evaluate R.D.'s functioning in the six child domains. *See id*. at 18-29. According to Plaintiff, the ALJ's finding of "less than marked" or no limitations was not supported by substantial evidence. *See id*.

Finally, Plaintiff argues that the Appeals Council improperly determined that medical record evidence from John R. Oshei Children's Hospital, dated July 25, 2017, to April 28, 2019, and submitted after the ALJ's decision, did not show a reasonable probability that it would change the outcome of the decision. *See id.* at 29-30.

The Commissioner argues in response that: (1) the ALJ properly considered Ms. Haddad's December 2016 teacher questionnaire and the March 2018 OT Summary, and assignment of a specific weight would not have affected the outcome; (2) the ALJ's finding that R.D.'s impairments did not cause an extreme limitation in one domain or marked limitations in two

domains was supported by substantial evidence; and (3) the Appeals Council properly determined that the additional evidence submitted after the issuance of the ALJ's decision did not show a reasonable probability that it would change the outcome of the decision. *See* ECF No. 18-1 at 7-18.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record and the ALJ's decision, the Court finds that the ALJ thoroughly considered all the evidence in the record in evaluating R.D.'s functioning, including Ms. Haddad's teacher questionnaire, the OT Summary, and the assessments of two consultative examiners and a state agency reviewing physician, as well as reports of R.D.'s participation in an "504 Accommodation Plan." The ALJ recognized that R.D. had certain learning impairments, but reasonably concluded that R.D. had "less than a marked limitation" in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and health and physical well-being, and no limitation in the domain of caring for oneself. Tr. 68-75.

The record reflects that R.D. was treated from December 9, 2010, to July 1, 2017, at Women & Children's Hospital of Buffalo[2] ("WCHOB"), for treatment of asthma, dental

---

[2] Women & Children's Hospital of Buffalo later became known as John R. Oshei Children's Hospital, sometimes known simply as Oishei Children's Hospital ("OCH"). *See* OCH website, https://www.ochbuffalo.org (last visited Feb. 6, 2024).

restorations, viral infection, and hemihypertrophy. Tr. 276-301, 483-506, 860-991. On March 24, 2014, R.D. was seen by Laurie Sadler, M.D. ("Dr. Sadler"), at Genetics at WCHOB, UBMD Physicians Group, for evaluation and treatment of immunologic disease and left leg longer than right. Tr. 943-44. Dr. Sadler noted that R.D. "appear[ed] to be doing well and advised that R.D. should have abdominal and renal ultrasounds every six months. Tr. 944. Dr. Sadler further noted that "[R.D.'s] leg length discrepancy was being monitored by Dr. Ferrick [, and she] may need a shoe lift if her leg length discrepancy increases.  *Id.*

The record also reflects that from February 27, 2012, to March 14, 2018, R.D. presented to Jane M. Parmington, M.D. ("Dr. Parmington"), and other providers at Towne Garden Pediatrics, for treatment of asthma, ADHD, rash, immunodeficiency disorders, possible severe combined immune deficiency ("SCID"), leg length discrepancy, and other conditions. Tr. 302-16, 342-751, 757-859).

On November 29, 2016, R.D. was seen by Dr. Parmington to start medication for ADHD based on "Vanderbilts from teacher"[3] and inattention. Tr. 304-05.  At the time, R.D. was in first grade. Tr. 304. The treatment record notes that R.D. had "no recent issues with her asthma," and Dr. Parmington described R.D. as "a healthy appearing 6[=]year[-]old girl in Nad [no apparent distress]." Tr. 305. Dr. Parmington diagnosed ADHD and started R.D. on Adderall 5 mg daily and continued Albuterol as needed for asthma. *Id.*

On December 19, 2016, first grade teacher Ms. Haddad completed a questionnaire in which she assessed "very serious," "serious," and "obvious" problems in multiple domains. Tr. 217-25. Ms. Haddad found that R.D. had problems in "acquiring and using information" with a "very

---

[3] The Vanderbilt Assessment Scales are used by health care professionals to help diagnose ADHD in children between the ages of six and twelve. National Institute for Children's Health Quality (NICHQ) website, available at https://nichq.org/resource/nichq-vanderbilt-assessment-scales (last visited Jan. 31, 2024).

serious" problem in reading and comprehending written material; and expressing ideas in written form; "serious" problem(s) in multiple areas; and "obvious" problems in some areas. Tr. 218-19. Ms. Haddad also found that R.D. had problems in "attending and completing tasks" with a "very serious" problem(s), on an hourly basis, in the following areas: completing class/homework assignments; completing work accurately without careless mistakes; and working at a reasonable pace/finish on time. Tr. 220. Ms. Haddad found that R.D. had "serious" problems, on an hourly basis and on a daily basis in multiple areas including, on an hourly basis, focusing long enough to finish an activity or task; refocusing to task when needed; and working without distracting self or others and on a daily basis, carrying out single and multiple step instructions. *Id*.

Ms. Haddad noted that when R.D. was given an independent task, she had severe difficulty completing the task; and at times, it was due to her not understanding what to do, but most of the time she needed constant re-direction to complete a task. Tr. 220. Ms. Haddad assessed "obvious" problems in "interacting and relating with others" on a daily basis, in using vocabulary and grammar to express thoughts/ideas; and "slight" problem(s) in following rules daily; and other areas on a weekly or monthly basis. Tr. 221. Ms. Haddad also found that R.D. had "serious" problems in the domain of "moving about and manipulating objects" in moving her body from one place to another and manipulating things. Tr. 222. Ms. Haddad also noted that R.D. was taking ADHD medication. Tr. 223.

On December 30, 2016, R.D. presented to Dr. Parmington for medication follow-up after starting Adderall one month prior. Tr. 342-62. Dr. Parmington noted that repeat Vanderbilt tests after starting meds showed 8/9 for inattention on medication, and 9/9 without medication. Tr, 342. However, Dr. Parmington was not sure if this was because the medication was not helpful, or if it was due to "holiday stimulation," as the test was performed right before Christmas. *Id*. Dr.

Parmington continued Adderall at the same dosage for the next month; she stated she would request repeat Vanderbilts in mid-January and consider increasing dosage if the scored did not improve. Tr. 345.

On January 26, 2017, Samuel Balderman, M.D. ("Dr. Balderman"), performed a consultative pediatric examination. Tr. 318-21. Dr. Balderman observed intact sensation and normal gait, stance, strength, range of motion, and gross motor skills; R.D. could walk on her heels and toes, get on and off the examination table, and rise from a chair without difficulty. Tr. 319. Dr. Balderman opined that R.D. had no physical limitations. Tr. 321.

On February 6, 2017, R.D. was found "eligible under Section 504 as a student with a disability that substantially limits one or more life activities and receive accommodations" (Tr. 340-41), after which a 504 Accommodation Plan was established for the 2016-2017 school year (Tr. 337-339). The report noted that R.D. displayed some behaviors less typical for a child her age such as worrying and missing family randomly throughout day; and she got became upset and cried easily. Tr. 337. She was described as "often doing strange things" and was seemingly unaware of others and made random comments or told off-topic stories indicating that she was not paying attention to teacher. *Id*. When asked a question, she looked like she had no idea what was said and often replied she did not know, even to simple questions, like if she saw her mother last night. *Id*. She especially struggled with recall of verbal information and was not making academic progress, despite interventions put in place. Tr. 338. Her attention improved with medication, but she still required numerous supports to focus and complete work. *Id*. The report further noted that R.D. had been on ADHD medication for three months, and her doctor was still trying to figure out the correct dose. *Id*.

R.D.'s accommodations included small group instruction, one on one assistance with assignments and tasks, chunking work, allowing the claimant to take breaks after she has completed a certain amount of work, modified homework, repeating directions back after teacher has given them, extended time for assignments and tests, and testing accommodations. *Id*. Tr. 338. On March 22, 2019, the 504 Accommodation Plan was updated for the 2018-2019 school year with similar accommodations. Tr. 249-254.

On February 9, 2017, first grade teacher Ms. Haddad wrote a letter to Plaintiff's attorney at Plaintiff's request. Tr. 334. Ms. Haddad indicated that "a 504 plan would not be substantial enough support" and recommended that R.D. undergo an educational evaluation, psychological evaluation, and occupational therapy evaluation due to difficulty focusing in school. *Id*.

On February 7, 2017, state agency physician, B. Stouter, M.D. ("Dr. Stouter"), reviewed the evidence in the record, including Ms. Haddad's December 2016 teacher questionnaire. Tr. 107-17. Dr. Stouter opined that R.D.'s impairment or combination of impairments did not meet, medically equal, or functionally equal the listings. Tr. 113-17. Dr. Stouter opined that R.D. had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, health and physical well-being, and no limitations in the remaining domains. Tr. 113-14.

On March 29-30, 2017, R.D. was seen by Jeffrey Yu, M.D., Ph.D. ("Dr. Yu"), at Towne Garden Pediatrics, for a medication check and well-child exam. Tr. 758-784. Plaintiff reported that R.D. took ADHD medication 5 mg every morning; she had "improved a little bit" and was calming down and not getting into too much trouble. Tr. 758.  However, Plaintiff felt an increased dose would help more. *Id*. Plaintiff stated that she was looking into getting an IEP (Individualized Education Program) in place for R.D. for the next year school year.  *Id*. Plaintiff also reported that R.D. experienced asthma symptoms "only when she gets a cold;" it had been "about 4 months since

her last albuterol use;" and she was not coughing through the night or experiencing other symptoms. Tr. 758. Dr. Yu described R.D.'s asthma as "well controlled with albuterol." Tr. 760. Physical examination showed full range of motion in the extremities and no neurological deficits, and Dr. Yu noted that R.D. was "growing and developing appropriately." *Id*. Dr. Yu also noted that R.D.'s "last Vanderbilts were high" and increased her Adderall dosage to 10 mg.  *Id*.

On July 25, 2017, Dr. Parmington noted that R.D.'s behavior was greatly improved on Adderall, but her appetite had decreased. Tr. 785. On August 30, 2017, Dr. Parmington noted that R.D. was doing better with medication, but she could be very active and hard to control when her medication wore off. Tr. 813. Plaintiff reported that R.D.'s appetite was "fine," but on examination, Dr. Parmington noted that R.D. was "very active and thin." Tr. 814.  Dr. Parmington highly recommended additional help such as "behavior therapies." *Id*. Due to low R.D.'s BMI and weight concerns, Dr. Parmington was unable to increase R.D.'s Adderall dosage.  *Id*.

On March 13, 2018, R.D. was seen by nurse practitioner Marsha Langan ("Ms. Langan") at Towne Garden Pediatrics, for "ADHD surveillance," accompanied by her grandmother. Tr. 834-59. Ms. Langan noted that R.D. splits her time between her mother's home and her grandmother's home. Tr. 834.  Her grandmother reported that R.D. was "doing well" and denied receiving any calls from the school. *Id*. R.D. reportedly "eats all of the time" and refused nutritional supplements. *Id*. On physical examination, R.D.'s BMI was 14; her weight was in the 7th percentile; and her height was in the 25th percentile, with height showing a decline in percentile. Tr. 835. R.D. was active and playful, and Ms. Langan noted right exotropia, dental restorations, and no corrective lenses.  *Id*. She stated she would request Vanderbilt screenings and ordered no change in Adderall dosage despite poor growth and poor weight gain. *Id*.  Ms. Langan urged R.D.'s grandmother to make her an ice cream smoothie daily with cream and cookies. *Id*.

That same day, Plaintiff called Towne Garden Pediatrics social worker Adia Evans ("Ms. Evans") and reported that R.D.'s teacher continued to complain that R.D. "does not stay focused and cannot get work done." Tr. 854. Plaintiff also reported that R.D. had a difficult time at home with getting tasks done. *Id*. Ms. Evans indicated that she would send the Vanderbilt form to the school to assess how R.D. was doing on her current dose of medications. *Id*.

According to the 2017-2018 OT Summary dated March 20, 2018, R.D. had deficits in attention to task, following verbal directions and could be easily distracted by external and internal stimuli, and she needed reminders to stay on task. Tr. 252. The report recommended that occupational therapy could improve her upper extremity/core strength and visual motor skills. *Id*.

On September 11, 2018, R.D. was seen by nurse practitioner Karla Sherwood ("Ms. Sherwood"), at Towne Garden Pediatrics, for an ADHD medication check. Tr. 993-94. R.D. was taking Adderall 10 mg around 8:00 a.m., which Plaintiff reported wore off around 6 p.m. Tr. 993. R.D.'s physical examination was unremarkable, and R.D. was to return for a medication check in three months. *Id*.

## I.     The ALJ Properly Considered the Opinion Evidence.

Plaintiff's first point of error argues that the ALJ failed to weigh the opinions of Ms. Haddad, R.D.'s first grade teacher. *See* ECF No. 15-1 at 12-18. According to Plaintiff, Ms. Haddad's opinions supported marked limitations in at least two childhood domains, and thus, supported a disability finding. *See id*. Plaintiff also argues that the ALJ did not weigh opinions contained in the OT Summary submitted by Ms. Bauer and Ms. Hameister. *Id*. Contrary to Plaintiff's argument, however, the ALJ explained that he considered "all of the relevant evidence," specifically noting that "information from other sources, such as school teachers," was relevant evidence. Tr. 65. Furthermore, the ALJ's decision reflects that he properly considered these opinions. Tr. 70-74, 218-25.

First, the ALJ's decision reflects that he properly evaluated Ms. Haddad's 2016 teacher questionnaire using the factors for weighing opinion evidence in accordance with 20 C.F.R. § 416.927(c). For claims filed before March 27, 2017, such as R.D.'s claim, the applicable regulations provide that the ALJ should consider opinions from nonmedical sources using the regulatory factors listed at 20 C.F.R. § 416.927(c)(1) through (c)(6).[4] *See* 20 C.F.R. § 416.927(f)(1). However, the regulations explicitly state that "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion . . . from a nonmedical source depends on the particular facts in each case." *Id*. The regulations explain that when articulating the weight assigned to a nonmedical source opinion, the ALJ "should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id*. at § 416.927(f)(2).

In accordance with the relevant regulation, the ALJ properly considered Ms. Haddad's 2016 teacher questionnaire, noting under the interacting and relating with others domain, that R.D. "gets along with peers". Tr. 72, 221; *see also* 20 C.F.R. § 416.927(f) (2017) (explaining how the Commissioner considers evidence from "nonmedical" sources, which "depends on the particular facts in each case"). This evidence was consistent with the ALJ's finding of "less than marked" limitations in this domain. Tr. 72.

In addition, the ALJ pointed out that Ms. Haddad "noted no significant problems" in the caring for herself domain, which was consistent with the ALJ's finding of "no limitation" in this

---

[4] These regulatory factors mirror the factors in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), and *Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019). As synthesized in subsequent cases, those factors include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

domain. Tr. 74, 223. Thus, contrary to Plaintiff's argument, the ALJ considered Ms. Haddad's questionnaire and relied on her statements in assessing the functional domains. *See Leon o/b/o J.E.V. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0491, 2020 WL 6699521, at *4 (W.D.N.Y. Nov. 13, 2020) (rejecting a similar argument that the ALJ did not provide "any indication of how much weight was actually given to" a teacher's questionnaire); *see also Williams*, 98 F.Supp.3d at 632 (citing *Jones*, 2003 WL 941722, at *10 (finding harmless error in the ALJ's failure to grant weight to the claimant's treating physicians because "he engaged in a detailed discussion of their findings, and his decision does not conflict with them")).

The ALJ also considered the consistency between Ms. Haddad's 2016 questionnaire and other evidence in the record. Tr. 70-74; *see also* 20 C.F.R. § 416.927(f)(1) (2017) (nonmedical source statements are considered using the factors in 20 C.F.R. § 416.927(c), including "consistency" "with the record as a whole" in 20 C.F.R. § 416.927(c)(3)). For example, the ALJ emphasized that Ms. Haddad's evaluation was inconsistent with Dr. Santarpia's January 2017 opinion. Tr. 70, 219, 325. Dr. Santarpia estimated that R.D.'s cognitive functioning was in the average range of ability and her general fund of information was appropriate to her age. Tr. 325.

In addition, while Ms. Haddad stated that R.D. had difficulty completing classwork independently, R.D.'s final grades for the 2017-2018 school year were "satisfactory overall," with R.D. receiving final grades of "S" for "satisfactory" in all subjects. Tr. 67, 70, 219, 256-57. R.D.'s non-final grades for the 2018-2019 school year as of November 5, 2018, were also "generally" "satisfactory overall," with a 93 in social studies, 84 in science, 86 in music, 83 in art, and 100 in physical education, although she had a 67 in math and 71 in English. Tr. 70, 73, 999. The ALJ also pointed out that the grade of 100 in physical education was inconsistent with Ms. Haddad's ratings in the moving about and manipulating objects domain. Tr. 73, 222, 999.

Although Ms. Haddad checked boxes rating "serious" and "very serious" problems in some activities in the domains of acquiring and using information, attending and completing tasks, and moving about and manipulating objects, this does not equate with finding marked or extreme limitations in any domain. Tr. 219-22. *See Nicole A. o/b/o J.D.J.W. v. Comm'r of Soc. Sec.*, No. 16-CV-1654L, 2021 WL 916016, at *4 (W.D.N.Y. Mar. 10, 2021) (despite noting some "serious" and "very serious" problems in certain activities, a teacher questionnaire supported the ALJ's finding of "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and caring for oneself). Based on the foregoing, the ALJ properly did not assign controlling or significant weight to Ms. Haddad's 2016 teacher questionnaire.

Dr. Stouter also considered Ms. Haddad's teacher questionnaire and found "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, health and physical well-being, and no limitations in the remaining domains. Tr. 70-75, 113-14. Thus, even if the ALJ had given Ms. Haddad's 2016 teacher questionnaire great, significant, or substantial weight, it would not have compelled a finding that R.D. was disabled. *See Thompson o/b/o E.I.E.G. v. Berryhill*, No. 17-CV-901(HKS), 2019 WL 590680, at *3 (W.D.N.Y. Feb. 12, 2019) (remand unnecessary, in part, because even if the ALJ gave substantial weight to a teacher questionnaire, it would not have compelled a finding that the claimant was disabled). Accordingly, the Court finds no error in the ALJ's failure to assign a specific weight to Ms. Haddad's 2016 teacher questionnaire.

The ALJ also considered that in February 2017, Ms. Haddad recommended that R.D. undergo educational, psychological, and occupational therapy evaluations due to difficulty focusing in school. Tr. 67. 334. As the ALJ noted, school records indicated that R.D. had deficits in attention to task and following verbal directions; she was easily distracted by external and

internal stimuli; and she needed reminders to stay on task. Tr. 71, 218-24, 247, 252. The record indicates that these recommended educational and psychological evaluations were conducted in February 2017, and R.D. began occupational therapy during the 2017-2018 school year. Tr. 64, 67-68, 71, 75, 246-48, 250, 323-26. The ALJ also considered the March 2018 OT Summary, noting that it concluded that occupational therapy could improve R.D.'s upper extremity/core strength and visual motor skills. Tr. 67, 252. The OT Summary also showed that R.D. was "making progress," and her strengths included fair-good eye hand coordination and the ability to use a pincer grasp when manipulating small objects and consistently use her right hand to complete various fine/visual motor activities. Tr. 253-54.

While the summary indicated that there were "occasions" when R.D. was "easily distracted" and "need[ed] increased prompts," this evidence does not equate with finding an extreme limitation in at least one domain or marked limitations in at least two domains, which is required to find that R.D.'s impairments functionally equaled the listings. Tr. 252-54. "'When . . . the evidence of record permits us to glean the rationale of an ALJ's decision,' a court need not remand a social security case for 'further findings or a clearer explanation." *Thompson*, 2019 WL 590680, at *3 (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1981)). Therefore, considering the evidence of record, the Court finds that the ALJ's analysis of the opinion decision was sufficiently clear and supported by substantial evidence.

Finally, because the ALJ's failure to explicitly assign these opinions a specific weight would not have affected the outcome of the ALJ's decision, any error was harmless. *Williams v. Colvin*, 98 F. Supp. 3d 614, 632 (W.D.N.Y. 2015) (citing *Ryan v. Astrue*, 650 F.Supp. 2d 207, 217 (N.D.N.Y.2009) ("[C]ourts have found harmless error where the ALJ failed to afford weight to a treating physician when an analysis of weight by the ALJ would not have affected the outcome.");

*see also Garrett W. v. Comm'r of Soc. Sec.*, No. 19-CV-1091MWP, 2021 WL 821833, at *5 (W.D.N.Y. Mar. 4, 2021) (acknowledging that "the failure to explicitly assign weight to an opinion may be harmless in some scenarios," such as "where the ALJ's decision reflects that the opinion was considered").

## II.    Substantial Evidence Supports the ALJ's Findings in the Child Functional Domains.

Plaintiff's second point of error argues that the ALJ failed to properly evaluate Plaintiff's functioning in five of the six child domains. *See* ECF No. 15-1 at 18-29. Specifically, Plaintiff contends that the ALJ's finding of less than marked limitations in the domains of (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) health and well-being; and (5) moving about and manipulating objects was not supported by substantial evidence. *See id*.

### a)    Acquiring and using information domain.

The domain of acquiring and using information addresses how well a child learns information and how well the child uses the information learned. 20 C.F.R. § 416.926a(g). This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community. 20 CFR 416.926a(g) and Social Security Regulation ("SSR") 09-3p.

Here, substantial evidence supports the ALJ's finding that R.D. had less than a marked limitation in the domain of acquiring and using information. Tr. 69-70. In making this finding, the ALJ first considered that Plaintiff's testimony that R.D. had difficulty with schoolwork especially in math and reading. Tr. 70. As the ALJ explained, R.D.'s teachers also noted that R.D. had difficulty completing classwork independently and needed 1:1 support in math and reading, but her final grades in the 2017-2018 school year were described as satisfactory overall. Tr. 67, 70,

219, 256-57. R.D.'s non-final grades for the 2018-2019 school year as of November 5, 2018, were also "generally" "satisfactory overall," with a 93 in social studies, 84 in science, 86 in music, 83 in art, and 100 in physical education; however, she had a 67 in math and 71 in English. Tr. 70, 73, 999.

The ALJ's finding of less than marked limitations in this domain is also consistent with the January 2017 opinion of psychiatric consultative examiner Dr. Santarpia. Tr. 70. Dr. Santarpia observed that R.D. followed directions and answered questions appropriately and politely, and her cognitive functioning was estimated to be in the average range with appropriate to age general fund to information. Tr. 70, 323. As the ALJ noted, Dr. Santarpia opined that R.D. was able to complete age-appropriate tasks; adequately maintain appropriate social behavior; interact adequately with peers; interact adequately with adults within normal limits; learn in accordance with cognitive functioning; ask questions and request assistance in age-appropriate manner; respond appropriately to changes in the environment; and attend to, follow, and understand age-appropriate directions. Tr. 68, 325.

The ALJ's finding of less than marked limitations in the domain of acquiring and using information is also consistent with the prior administrative findings of state agency medical consultant Dr. Stouter, who also found a less than a marked imitation or no limitation in each domain. Tr. 70, 113-17. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (holding that an ALJ appropriately relied on the report of a state agency doctor, who specifically assessed whether the child's impairments met or equaled a listed impairment). As noted above, Dr. Stouter reviewed the evidence in the record in February 2017, including Ms. Haddad's December 2016 teacher questionnaire and Dr. Santarpia's January 2017 opinion. Tr. 107-17.  The ALJ gave Dr. Stouter's opinion significant weight because her findings were generally consistent

with the totality of the evidence. as well as the type and degree of treatment needed, and R.D.'s activities. Tr. 68, 70.  *See* 20 C.F.R. §416.920c(c)(2) (explaining that the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be found).

Plaintiff repeatedly emphasizes R.D.'s eligibility for a 504 Accommodation Plan to argue that R.D. was "not functioning as a normal child of same age."  *See* ECF No. 15-1 at 20. However, designation as a "student with a disability" under section 504 of the Rehabilitation Act does not equate with a disability finding under the Social Security Act. *See* Pub. L. 93-112, Title V, § 504; 29 U.S.C. § 794. Based on the foregoing, the ALJ reasonably found that R.D. demonstrated a less than marked limitation in the domain of acquiring and using information, and the ALJ's finding was supported by substantial evidence. Tr. 70.

**b) Attending and completing tasks domain.**

Substantial evidence also supports the ALJ's finding that R.D. had less than a marked limitation in the domain of attending and completing tasks. Tr. 71. This domain addresses how well a child is able to "focus and maintain [] attention, and how well" the child begins, carries through, and finishes his activities, including the pace at which he performs activities and how easily he can change activities. 20 C.F.R. § 416.926a(h)(iv).

In finding that R.D. had less than a marked limitation in this domain, the ALJ again considered Plaintiff's testimony that R.D. had difficulty paying attention and sticking with tasks. Tr. 71. The ALJ also discussed Ms. Haddad's report indicating that when R.D. was given an independent task, she had difficulty completing the task and often needed redirection to complete a task. Tr. 71, 220.

The ALJ also properly considered that R.D. received a 504 Accommodation Plan, which included small group instruction, 1:1 assistance with assignments and tasks, chunking work, allowing R.D. to take breaks after she had completed a certain amount of work, modified homework, repeating directions back after her teacher had given them, extended time for assignments and tests, and testing accommodations. Tr. 71, 246, 250, 338. The ALJ also noted that Dr. Stouter found less than marked imitation in this domain. Tr. 71, 113-17. Notably, in assessing R.D.'s functioning, Dr. Stouter considered the effects of structured or supportive settings, such as the supports from a 504 plan, and determined that R.D. had less than marked limitations in all the domains. Tr. 113-17. Accordingly, the ALJ properly considered R.D.'s 504 Accommodation Plan and reasonably found "less than marked" limitations in the domain of attending and completing tasks. Tr. 64, 68, 70-71, 246, 250, 338, 999; *see also* 20 C.F.R. §§ 416.926a(e) (2-3). As the ALJ noted, R.D.'s behavior was described as greatly improved on medication, and she was much calmer and less likely to get into trouble. Tr. 71, 758-59, 785, 813.

Thus, substantial evidence of record supports the ALJ's finding, and while Plaintiff may disagree with the ALJ's conclusions in this domain, her mere disagreement with the ALJ's findings does not warrant remand. Even if the evidence demonstrated some limitation in this domain, that would not be enough, as Plaintiff must produce evidence showing marked, *i.e.*, more than moderate, limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d); *see also Brault v. Soc. Sec. Admin., Comm'r.*, 683 F.3d 443, 448 (2d Cir. 2012) (holding that the Commissioner's findings of fact are conclusive and must be upheld unless "a reasonable factfinder would *have to conclude otherwise*."). The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). As discussed above, there is such evidence.

c)  **Interacting and Relating with Others.**

Substantial evidence also supports the ALJ's finding that R.D. had less than a marked limitation in interacting and relating with others. Tr. 71. This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community. 20 CFR 416.926a(i) and SSR 09-Sp.

The ALJ first noted Plaintiff's report that R.D. sometimes prefers "to watch her tablet in a corner by herself" instead of playing with other children. Tr. 72, 96. Plaintiff also noted that R.D. had an incident with another child on the school bus and hit the other child with her bookbag.  Tr. 72, 90, 101. However, the ALJ also noted that the record indicated that R.D.  enjoys spending time with her family and plays with her cousins. Tr. 72, 325. Although some behavioral problems were noted in school records, R.D. was mostly described as having only slight problems in this area. Tr. 72, 221. Ms. Haddad indicated that R.D. "gets along with peers" although she has difficulty making conversation at first. *Id*. Dr. Stouter also identified no limitation in this domain. Tr. 113.

Although Plaintiff attempts to argue that the ALJ's consideration of this domain was inadequate (*see* ECF No. 15-1 at 25-27), the ALJ does not have to recite every piece of evidence to explain his rationale. *Ruano Juarez o/b/o R.R.O. v. Berryhill*, No. 18CV189 (LMS), 2019 WL 2162120, at *8 (S.D.N.Y. May 16, 2019), *aff'd sub nom. Juarez on behalf of R.R.O. v. Saul*, 800 F. App'x 63 (2d Cir. 2020) ("where 'the evidence of record permits the court to glean the rationale

of an ALJ's decision, the court does not require that he or she have mentioned every item of testimony presented to him or her or have explained why he or she considered particular evidence unpersuasive or insufficient to lead him or her to a conclusion of disability.") (quoting *Mongeur*, 722 F.2d at 1040; citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (declining to remand where the court was "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his or her determination was supported by substantial evidence.")).

Accordingly, Plaintiff has not met her burden of showing that remand is warranted for the ALJ to reconsider R.D.'s functioning in this domain. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.").

### d) Moving About and Manipulating Objects.

Substantial evidence also supports the ALJ's finding of a less than marked limitation in the domain of moving about and manipulating objects. Tr. 73. This domain considers how well a child is able to move her body from one place to another and how a child moves and manipulates objects. These activities may require gross motor skills, fine motor skills, or a combination of both. Limitations in this domain can be associated with musculoskeletal and neurological impairments, other physical impairments, medications or treatments, or mental impairments. 20 CFR 416.926a(j) and SSR 09-6p.

First, the ALJ referred to treatment notes indicating that R.D. likes to play in school and outside, and she enjoys playing video games and volleyball. Tr. 73, 325, 761. The ALJ noted that R.D. has a leg length discrepancy, which according to Plaintiff's testimony, affects her ability to run. Tr. 73, 101. However, the ALJ also noted that Plaintiff earlier noted that R.D. had no difficulties participating in physical education, and her report card showed a grade of 100 in this

class. Tr. 73, 999. As previously mentioned, the ALJ also noted that the grade of 100 in physical education was inconsistent with Ms. Haddad's evaluation of this domain. Tr. 73, 222, 999.

The ALJ also acknowledged Ms. Haddad's assessment that R.D. had difficulty staying in her seat and sitting correctly, as well as difficulty gripping her pencil. Tr. 73, 222 However, the March 2018 OT Summary, which the ALJ also considered, showed that R.D. was "making progress" and her strengths included "fair-good eye hand coordination" and the ability to use a pincer grasp when manipulating small objects and consistently use her right hand to complete various fine/visual motor activities. Tr. 67, 252-54. The ALJ also noted Plaintiff's testimony that R.D. may require future surgery to address her leg length discrepancy (Tr. 102), although this was not noted in the record. Tr. 73.

The January 2017 consultative report of consultative examiner Dr. Balderman also supports the ALJ's finding in the domain of moving about and manipulating objects. Tr. 67-68, 318-21. Dr. Balderman observed intact sensation and normal gait, stance, strength, range of motion, and gross motor skills. Tr. 65, 67, 319-20. R.D. could walk on her heels and toes, get on and off the examination table, and rise from a chair without difficulty. Tr. 67, 319. In addition, the ALJ noted Dr. Balderman's opinion that R.D. had no physical limitations. Tr. 68, 321.

The ALJ also noted treatment notes showing that R.D.'s asthma was well controlled. Tr. 73. In November 2016, Plaintiff reported that R.D. had "no recent issues with her asthma." Tr. 304. In March 2017, Dr. Yu described R.D.'s asthma as "well controlled with albuterol." Tr. 73, 760. The ALJ also noted that there was no evidence that R.D. had restrictions in participating in physical education at school, and school records noted no problems in this area, as previously discussed. *Id*. Finally, the ALJ noted that Dr. Stouter identified a less than marked limitation this domain. Tr. 73, 114.

Based on the foregoing, the ALJ's analysis, as well as the evidence of record, supports the ALJ's finding of less than a marked limitation in moving about and manipulating objects. While Plaintiff may disagree with the ALJ's conclusions in this domain, her mere disagreement with the ALJ's findings does not warrant remand. Even if the evidence demonstrated some limitation in this domain, that would not be enough, as Plaintiff must produce evidence showing marked, *i.e.*, more than moderate, limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d); *see also Brault*, 683 F.3d at 448. The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran*, 569 F.3d at 112. As discussed above, there is such evidence.

### e) Health and Physical Well-Being.

Substantial evidence also supports the ALJ's finding that R.D. had less than a marked limitation in the domain of health and physical well-being. This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects (20 CFR 416.929a(1)). Unlike the other five domains of functional equivalence, which address a child's abilities, this domain does not address typical development and functioning. The "Health and Physical Well-Being" domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being. 20 CFR 416.929a(l) and SSR 09-8p.

As the ALJ noted, R.D. was prescribed Adderall for ADHD, and her asthma was described as well controlled with albuterol. Tr. 75, 760. The ALJ also noted that R.D had a 504 Accommodation Plan and would likely be evaluated for an IEP in the future, but overall, she had not needed frequent or time-consuming treatment. Tr. 75, 340-341, 337-341, 758. The ALJ further

noted that R.D.'s growth and development had been generally normal for her age, and there had been no cited episodes of exacerbation or worsening in her conditions or overnight hospital stays. Tr. 75. 760. The ALJ also noted that R.D. had no restrictions, and her conditions did not appear to have prevented her from leading a fairly normal life and likely would not prevent her from continuing to participate in age-appropriate activities. Tr. 75.

The January 2017 findings of consultative examiner Dr. Balderman also support the ALJ's finding in this domain. Tr. 67-68, 318-21. As noted previously, Dr. Balderman's examination findings were generally unremarkable, and he assessed no physical limitations. Tr. 65, 67, 319-20. Dr. Stouter also identified a less than marked imitation in this domain. Tr. 114. Therefore, substantial evidence in the record supported the ALJ's conclusion that R.D. had less-than-marked limitations in this domain. Tr. 75. Once again, while Plaintiff may disagree, she has not shown that no reasonable factfinder could have reached the same conclusion based on the evidence of record. *See Brault*, 683 F.3d at 448.

**III.    The Appeals Council Properly Considered Plaintiff's Post-Decision Evidence.**

Plaintiff's final point of error argues that the Appeals Council "improperly disallowed" medical evidence submitted after the ALJ's May 3, 2019 decision, which included medical records from OCH, dated July 25, 2017, to April 28, 2019 (Tr. 7-52). *See* ECF No. 15-1 at 2, 29-30. The Appeals Council declined to exhibit this additional evidence, finding that it did not "show a reasonable probability that it would change the outcome of the decision." Tr. 2.

As an initial matter, the Court finds that the additional evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d. 41, 45 (2d Cir.

1996). The regulations expressly authorize claimants to submit new and material evidence[5] to the Appeals Council without a "good cause" requirement, if it relates to the period on or before the ALJ's decision. *Id.* (citing § 404.970(b) and § 416.1470(b)). The Appeals Council evaluates the entire record, including any new and material evidence submitted if it is chronologically relevant, to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014).

Accordingly, the new evidence should be treated as part of the administrative record. *Id*. The Appeals Council is required to "evaluate the entire record including the new and material evidence submitted . . . [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." § 404.970(b); *see also* § 416.1470(b). *Id.* "Therefore, when the Appeals Council denies review after considering new evidence, the Secretary's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Id.* (citing *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Accordingly, the administrative record before this Court consists of all evidence submitted prior to judicial review, including any new evidence that was not before the ALJ.

In addition, the regulations do not require the Appeals Council to provide an elaborate explanation when it evaluates additional evidence presented. 20 C.F.R. § 404.967 (only requires Appeals Council to notify the party of its action), and § 404.970 (does not mention any information

---

[5] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id.*

that must be in the denial notice). Furthermore, the Second Circuit has specifically acknowledged that the Appeals Council's denial of review does not amount to consideration on the merits but rather, is analogous to denial of *certiorari*. *See Pollard*, 377 F.3d, at 192 (citations omitted). Thus, the Appeals Council was not required to specify why it found the additional evidence did not warrant further review of the ALJ's decision.

The Court has reviewed the entire record, including the additional evidence submitted after the ALJ's decision, and finds that the Appeals Council properly determined that this evidence did not show a reasonable probability of changing the outcome of the ALJ's decision. Tr. 2. This evidence includes a September 2017 ultrasound of the abdomen and retroperitoneum that was "within normal limits" (Tr. 8-17) and an April 2019 visit to the OCH Emergency Department ("ED"), during which R.D. was diagnosed with flu (Tr. 18-52). Plaintiff contends that this later-submitted evidence shows there was discussion about possible surgery or a shoe lift to address R.D.'s congenital leg length discrepancy. *See* ECF No. 15-1 at 29-30 (citing (Tr. 46); Plaintiff also contends that this later-submitted evidence shows that R.D. required another increase in Adderall, suggesting her ADHD was not improved. *See id.* (citing (Tr. 36, 38, 48).  As further explained below, Plaintiff has failed to demonstrate that there is a substantial likelihood of a different result in light of this additional evidence.

Plaintiff points to historical notes contained in the "Problems" list from the April 2019 ED triage record from Jennifer L. Yunker, M.D. ("Dr. Yunker"), dated June 8, 2011, and November 13, 2013. *See* ECF No. 15-1 at 29-30 (citing Tr. 46). The June 2011 note indicates that R.D. "may require leg length equalization type surgery" to address her congenital leg length discrepancy. Tr. 46. The November 2013 note indicates that R.D. was seen by Orthopedics but "no shoe lift yet, needs to see Genetics." *Id*.

Contrary to Plaintiff's contentions, the record before the ALJ contained similar "Problems" lists. *See* Tr. 740, 774, 801, 822, 848, 910, 934, 958. Furthermore, Dr. Yunker's 2012 treatment notes were in the record before the ALJ. Tr. 67, 700-21. In addition, the ALJ specifically considered a March 2014 treatment note indicating that R.D. "may need a shoe lift if her leg length discrepancy increases." Tr. 67, 944. And while the ALJ stated that R.D.'s possible need for future surgery to address her leg length discrepancy was not noted in the record (Tr. 73), the Court finds this was harmless error, as Dr. Yunker's June 2011 note was almost eight years before the ALJ's May 2019 decision, and there is no recent mention in the record to indicate that a surgical intervention was planned or even being considered. Thus, Dr. Yunker's June 2011 historical note contained in the April 2019 ED record adds little of note which the ALJ had not already considered. Tr. 46. Because this evidence does not show a reasonable probability of changing the outcome, and it is not new or materially relevant to the period beginning over five years later with R.D.'s November 2016 application, the Appeals Council properly determined that this "new" evidence did not present "a reasonable probability that it would change the outcome of the decision." Tr. 2. *See Perez*, 77 F.3d at 45.

The Court is similarly unpersuaded by Plaintiff 's argument that this April 2019 ED treatment record indicating that R.D. was taking 15 mg of Adderall (Tr. 36, 38, 48), rather than 10 mg as noted by the ALJ (Tr. 66), suggests that the ALJ erred in his conclusion that R.D.'s ADHD had improved. *See* ECF No. 15-1 at 29-30. As reflected throughout the record, however, R.D.'s providers were following her closely to determine the correct dosage of Adderall, in light of such factors as R.D.'s appetite and weight and the results of her Vanderbilt evaluations. *See, e.g.*, Tr. 338, 345, 760, 835, 854. In fact, in September 2018, R.D. was taking Adderall 10 mg, which Plaintiff reported wore off around 6 p.m., and R.D. was to return for a medication check in three

months. *Id*. Thus, it is not unreasonable that R.D.'s dosage was increased after the November 2018 administrative hearing.

In any event, the Court finds that this April 2019 medication record from an ED visit is not contrary to the weight of the evidence, and thus, does not render the ALJ's functional equivalence findings unsupported. *See Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (holding that the Appeals Council will consider new evidence only if the evidence is material, the evidence relates to the period on or before the ALJ's decision, and the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence); *see also Pennetta v. Comm'r of Soc. Sec.*, No. 18-CV-6093-FPG, 2019 WL 156263, at *3 (W.D.N.Y. Jan. 10, 2019) (holding that the Appeals Council considers additional evidence only when "there is a reasonable probability that it would change the outcome of the decision.").

In summary, the ALJ thoroughly reviewed the entire record, including the opinion evidence, treatment records, educational records, and Plaintiff's testimony, and reasonably concluded that R.D. did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. Tr. 75. *See Lowry v. Astrue*, 474 F. App'x 801, 805 (2d Cir. 2012) (rejecting plaintiff's contention that ALJ failed to meaningfully explain his reasons for not crediting certain evidence in finding that child's impairments did not functionally equal listings) (citing *Mongeur*, 722 F.2d at 1040); *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015) (observing that, under the substantial evidence standard, the fact that the evidence may arguably be reconciled to a claimant's favor is "not probative of anything" as long as the ALJ's different interpretation was reasonable).

Although Plaintiff disagrees with the ALJ's finding and tries to argue that the ALJ should have reached a different conclusion, Plaintiff's burden was to show that no reasonable mind could

have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). As previously noted, the question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v*, 569 F.3d at 112. As explained above, there is such evidence here. The Court accordingly finds no error in the ALJ's determination that R.D. is not disabled.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 18) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE